Coös,
Dec. 1, 1908.

INTERNATIONAL PAPER CO. *v.* MILES, *Adm'r, & a.*

Where a contract for the cutting of timber provides for the subsequent assignment of certain improvements and leases by the operator as security for a contemplated loan of money by the landowner, and stipulates that the rights so assigned shall become the property of the latter upon default in payment of the loan or in the performance of the other agreements of the contract, the promisee cannot insist upon a transfer of the property agreed to be pledged until a loan is made, and is not entitled to a decree establishing his ownership thereof, upon proof of general non-performance of the contract by the promisor.

BILL IN EQUITY. The questions are raised by the defendants' demurrer, which was overruled subject to their exception. Transferred from the April term, 1908, of the superior court by *Plummer, J.*

The bill alleges the following facts: The plaintiff is the successor in interest of the Glen Manufacturing Company. November 24, 1894, the Glen Company made a contract with Willis Tucker and Wilfred A. Hodgdon, by which the last named parties agreed to cut a large quantity of timber in certain townships in Coös county, the operations to extend over several years. Section 5 of the contract is as follows: "The company agrees to loan to said Tucker and Hodgdon, for the purpose of making improvements upon said lands or any of them, such sums, not exceeding in the aggregate ten thousand dollars ($10,000), as said Tucker and Hodgdon

shall request; said Tucker and Hodgdon to give their joint and several promissory notes for the amounts so loaned, payable in four or six months from their respective dates, the company agreeing to renew said notes from time to time at the request of said Tucker and Hodgdon, provided that the maturity for the last extension therefor, or any of them, shall not be beyond four years from the date of this agreement; and provided further, that said Tucker and Hodgdon pay interest thereon promptly as hereinafter provided and keep their other agreements herein. All said notes and the renewals thereof shall bear interest at the rate of six per cent per annum payable semi-annually. Said Tucker and Hodgdon shall assign and transfer all improvements made or which may be made by them upon said lands or any of them, and also all leases of other lands used in connection with this business, to the company as collateral security for the payment of said notes and any renewals thereof, which improvements and leases upon the default by said Tucker and Hodgdon in the payment of said notes or any of them, according to the terms hereof, or of any other of their agreements herein, shall after ninety days notice in writing by the company to said Tucker and Hodgdon of any such default become and be the absolute property of the company, but said Tucker and Hodgdon shall not be thereby relieved from liability upon said notes or any of them."

The interests of Tucker and Hodgdon finally became the property of Willis Tucker, now deceased, of whose estate the defendant Miles is the administrator. In carrying on lumbering operations the contractors have made certain improvements on the lands of the plaintiff, which the reasonable prosecution of the work rendered necessary or convenient. They also secured certain leases of lands and rights from third parties, which were used in carrying on the work. It is alleged that neither the contractors nor their successors have performed the conditions of the contract, but in 1903 abandoned the contract, and that in consequence thereof all the improvements made by them upon the lands and all leasehold rights acquired by them became the property of the plaintiff, upon the giving of a written notice to that effect to the defendants, which notice was given. In October, 1903, Tucker gave a personal mortgage of the improvements to the Tucker Lumber Company, one of the defendants, to secure the sum of $25,000. Miles has already removed some of the improvements, and threatens to sell or remove others. The prayer is that the improvements be decreed to be the property of the plaintiff, that an assignment of the leases from Miles as administrator to the plaintiff be ordered, and that Miles be restrained from removing or interfering with the property. By an amendment of the bill, the plaintiff seeks to recover damages for the non-fulfilment of the contract.

*Drew, Jordan, Shurtleff & Morris,* for the plaintiff.

*Herbert I. Goss* and *Sullivan & Daley,* for Miles.

Walker, J.    The principal contention involves a construction of section 5 of the agreement.    The plaintiff claims, in effect, that that section contains two distinct contracts or undertakings, viz.: (1) that the contractors should transfer and assign to the Glen Company all improvements made by them under the other provisions of the contract and all leases secured by them in the prosecution of the work, whenever they obtained a loan of money from the company, which property should be held as collateral security for such loan, and in case the loan was not paid when due the title to the property should at once pass to the company; and (2) that the property should at all times be deemed to be security for the contractors' performance of their agreements contained in the other sections of the contract, and in case of a breach thereof it should become the absolute property of the company, upon notice from it. There is no claim by the plaintiff that the contemplated loan was made, or that there was any transfer of the property; but it is insisted that upon the failure of the contractors to perform their agreements relating to the lumbering operations, the property, meaning the improvements and leases, was forfeited to the company and became its property, by virtue of the terms of section 5, without a formal transfer.    In accordance with this theory, the plaintiff asks for a decree establishing its right to the property, ordering a transfer of the leases, and restraining the defendants from interfering with the property.

But the language of section 5, upon a reasonable construction, does not support the plaintiff's contention.    The principal purpose of the parties therein was to provide for a loan of money if the contractors should desire it, in order that they might carry on the work more conveniently and expeditiously.    In an undertaking of this magnitude large expenditures of money were required; and it was the purpose of the parties to make arrangements for that necessity at the request of the contractors.    The company for its protection required a pledge or transfer of certain property, termed the improvements and leases, to hold as collateral security if it made the contemplated loan; the collateral thus transferred was to stand primarily as security for the payment of the notes evidencing the loan, and it may be it was intended as security for the performance of the contractors' agreements generally.    But if it had this effect, until a loan was made no transfer of property could be insisted upon by the company; and in the absence of a transfer to secure payment of the contractors' notes, the property

could not be held as security for their other agreements. So long as the contractors did not ask for the loan of money to carry on their operations, the inference is that the company did not desire to insist upon specific security for the general performance of the agreements of the contractors. At least, it seems clear that the parties did not understand they were making two distinct and independent contracts of indemnity, one relating to the notes, and the other to other promises on the part of the contractors. If the intention was that the improvements and leases should be deemed to constitute a general security, without regard to whether a loan of money was made or not, it would be natural to expect some definite expression of that intention. A matter of that importance would not ordinarily be inserted incidentally and parenthetically in a paragraph dealing with an entirely different matter. It would not be left to be discovered by an involved inference which neither the language nor subject-matter renders necessary. As it is not alleged that a loan was made, or that the property was transferred, it is not perceived how section 5 became effective, or how under it the plaintiff became entitled to the improvements and leases.

This result renders it unnecessary to consider the rights of the mortgagees of the property, as against the plaintiff, upon the allegations in the bill. Whether some of the property is of such a character that it cannot be removed from the land, whether some of it is a part of the real estate and is so annexed to the realty as to belong to the owner of the fee and to be governed by the law relating to real property, and if so, what part of it has that character, are questions which are not decided upon the present state of the pleadings. Nor is it deemed advisable to determine whether the plaintiff may proceed upon this bill in equity to try the questions of a breach of the contract by the contractors and the resulting damages, until the defendants definitely raise that issue and seek its adjudication.

*Case discharged.*

YOUNG, J., dissented : the others concurred.